IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

DAMONAN IRBY,

Defendant.

Criminal No.:  ELH-14-0511

### MEMORANDUM OPINION

Damonan Irby, the self-represented defendant, has filed an "Emergency Motion For Compassionate Release due to Covid-19 outbreak at FCI Fort Dix Camp," pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF 81 (the "Motion").  He seeks a reduction of his sentence to "time-served" or, alternatively, release to home confinement. The government opposes the Motion (ECF 85), supported by exhibits.  Defendant has replied.  ECF 88.  The Federal Public Defender has advised that it "will not be supplementing Mr. Irby's pro se motion . . . ."  ECF 83.

No hearing is needed to resolve the Motion. For the reasons that follow, I shall deny the Motion.

### I.      Factual Background[1]

Defendant and a codefendant were indicted on October 29, 2014.  ECF 14.  Count One charged conspiracy to distribute approximately four kilograms of a substance containing 3, 4 methylenedioxy-methylcathinone, otherwise known as MDMC or "Molly," a Schedule I controlled substance, in violation of 21 U.S.C. § 846.  Count Two charged defendants with

---

[1] The case was originally assigned to Judge J. Frederick Motz.  Because Judge Motz has retired, the case was reassigned to me in February 2019.

possession with intent to distribute four kilograms of a substance containing Molly, in violation of 21 U.S.C. § 841(a)(1).

Irby entered a plea of guilty to Count Two on August 24, 2015 (ECF 35), pursuant to a Plea Agreement. *See* ECF 36. In accordance with Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of 144 months' imprisonment as the appropriate disposition. *Id.* ¶¶ 8, 9.

The Plea Agreement (ECF 36) contained a stipulation of facts. *Id.* at 8-9. The facts established that on October 17, 2014, defendant was arrested at Valentino's Restaurant on Harford Road in Baltimore, after an out-of-state supplier was observed dropping off a shipment to the defendant, intended for his re-sale. *Id.* Law enforcement recovered four brick-shaped, wrapped items that later tested positive for MDMC. *Id.* They also recovered $39,920 that the defendant had brought with him to purchase the Molly. *Id.* Defendant has been in custody since his arrest.

Sentencing was held on November 23, 2015. ECF 42. The Amended Presentence Report (ECF 44, "PSR") indicated that defendant was 33 years old. *Id.* at 1. Further, the PSR reflected that defendant had three prior felony drug convictions: (1) a 2003 conviction for possession with intent to distribute heroin; (2) a 2005 conviction for possession with intent to distribute cocaine; and (3) a 2012 conviction for possession with intent to distribute CDS. *Id.* ¶¶ 26, 27, 31. As a result, defendant qualified as a Career Offender. *Id.* ¶¶ 19, 35.

Defendant began smoking marijuana at age 15. *Id.* ¶ 59. And, until the time of his arrest, he used cocaine on a daily basis and frequently used ecstasy. *Id.* However, the defendant reported that he "is in good physical health." *Id.* ¶ 57.

The defendant had a final offense level of 29. *Id.* ¶ 29. He had seven criminal history points, which equated to a criminal history category of IV. *Id.* ¶¶ 33, 34. However, because defendant qualified as a Career Offender, his criminal history category was increased to VI. *Id.* ¶

35. Based on a final offense level of 29 and a criminal history category of VI, defendant's advisory sentencing guidelines ("Guidelines") called for a sentence ranging between 151 and 188 months of incarceration.  *Id.* ¶ 67.

Judge Motz sentenced the defendant to 144 months' imprisonment, in accordance with the C Plea Agreement.  *See* ECF 42; ECF 36, ¶ 8.  Judgment was entered on December 10, 2015, with credit dating from October 20, 2014.  ECF 45.

In May 2017, the defendant filed a motion for post-conviction relief under 28 U.S.C. § 2255.  ECF 70.  Judge Motz denied the motion as untimely.  ECF 72; ECF 73.

Irby, who was born in 1982, is now 38 years of age. He is presently incarcerated at FCI Fort Dix.  ECF 85-1.  The defendant has served about 74 months of his 144-month sentence, which equates to about 51% of his sentence, exclusive of good time credits under 18 U.S.C. § 3624(b). *Id.*  His projected release date, according to the Bureau of Prisons ("BOP"), is January 9, 2025. *Id.* at 3. During his time in prison, the defendant has not had any disciplinary infractions.

The defendant filed a claim with the Warden seeking compassionate release in May 2020. ECF 85-2.  Defendant's claim was denied because the defendant did not demonstrate that he met the criteria for relief.  *Id.*

## II.    Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018); *see United States v. McCoy*, __ F.3d __, 2020 WL 7050097, at *2 (4th Cir. Dec. 2, 2020).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.  *McCoy*,

4

2020 WL 7050097, at *3.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 2020 WL 7050097, at *3. But, in U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might warrant compassionate release. *See McCoy,* 2020 WL 7050097, at *3. The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C). *McCoy,* 2020 WL 7050097, at *3. But, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, prior to the enactment of the First Step Act in December 2018. *Id.*

5

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 are more expansive than § 1B1.13. They indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."  U.S.S.G. § 1B1.13 App. Notes 1(A)-(D).

Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows:

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)   **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>  (I)  suffering from a serious physical or medical condition,
>
>  (II) suffering from a serious functional or cognitive impairment, or
>
>  (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

6

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence.  Application Note 1(C) concerns Family Circumstances.  Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 App. Note 1(D).  This is the "so-called, 'catch-all' category."  *McCoy*, 2020 WL 7050097, at *3.

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. However, the Court may not rely on the Program Statement.  Rather, the Court must consider the Sentencing Commission's policy statements.  *United States v. Taylor*, 820 F. App'x 229, 229-30 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").  And, in resolving a compassionate release motion, a court must also consider the factors in 18 U.S.C. § 3553(a).  *See Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, ___ Fed. App'x ___, 2020 WL 6743609, at *2 (4th Cir. Nov. 17, 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).

As noted, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'"  *United States v. Taylor*, 820 F. App'x 229,

230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t)

(directing Sentencing Commission to "describe what should be extraordinary and compelling

reasons for sentence reduction").  However, as indicated, the policy statement in § 1B1.13 of the

Guidelines was last updated in November 2018, before the enactment of the First Step Act.  Thus,

it is only "directed at BOP requests for sentence reductions."  *McCoy*, 2020 WL 7050097, at *3

(citing U.S.S.G. § 1B1.13).  In other words, "[b]y its plain terms…§ 1B1.13 does not apply to

defendant-filed motions under § 3582(c)(1)(A)."  *Id.* at *7; *see also United States v. Zullo,* 976

F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, __ F.3d __, 2020 WL 6817488, at *1–2

(6th Cir. Nov. 20, 2020); *United States v. Gunn*, __ F.3d __, 2020 WL 6813995, at *2 (7th Cir.

Nov. 20, 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement

'applicable' to [] defendants' compassionate-release motions, which means that district courts

need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining

whether there exist 'extraordinary and compelling reasons' for a sentence reduction."  *McCoy*,

2020 WL 7050097, at *8.   Therefore, district courts are "'empowered…to consider any

extraordinary and compelling reason for release that a defendant might raise.'"  *McCoy*, 2020 WL

7050097, at *9 (quoting *Zullo*, 976 F.3d at 230).

Nevertheless, as the movant, the defendant bears the burden of establishing that he is

entitled to a sentence reduction under 18 U.S.C. § 3582.  *See*, *e.g.*, *United States v. Hamilton*, 715

F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406,

at *3 (W.D. Va. Apr. 2, 2020).  If the defendant can show an extraordinary and compelling reason

that renders him eligible for a sentence reduction, the Court must then consider the factors under

18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate.

*Dillon*, 560 U.S. at 827.   But, compassionate release is a "rare" remedy.   *United States v.*

*Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.    COVID-19[2]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[3]   The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.   Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam*

---

[2] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW  (last accessed June 15, 2020).

*Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).  As of December 4, 2020, COVID-19 has infected more than 14.2 million Americans and caused over 277,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Dec. 4, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").  The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it."  *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393, (6th Cir. 2020).  Indeed, for a significant period of time, life as we have known it came to a halt.  Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

Currently, no vaccine, cure, or proven treatment is available.  But, a vaccine is on the horizon.  Indeed, other countries have already begun innoculations.

Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020 and July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect

the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes. *Id.* The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020).  Social distancing is particularly difficult in the penal setting, however.  *Seth*, 2020 WL 2571168, at *2.  Prisoners have little ability to isolate themselves from the threat posed by the coronavirus.  *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within

prisons and detention facilities is particularly high."). Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136,

134 Stat. 281.  In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General.  *See* Pub. L. No. 116-136, § 12003(b)(2).  On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ."  *Hallinan*, 2020 WL 3105094, at *9.  Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ."  *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus.  *Seth*, 2020 WL 2571168, at *2.  Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected.  Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[4]  As of December 4, 2020, the BOP had 124,538 federal inmates and 36,000 staff.  And, as of the same

---

[4] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.  Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19.  *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?name=styln-coronavisur&region=TOP_BANNER&block=storyline_menu_recirc&action=click&pgtype=LegacyCollection&impression_id=78b44851-1885-11eb-baa7-3f68d7b814c8&variant=1_Show.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems*." America Is Letting the Coronavirus Rage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html?referringSource=articleShare.

date, the BOP reported that 4,901 inmates and 1,509 BOP staff currently tested positive for COVID-19; 21,677 inmates and 2,057 staff have recovered from the virus; and 149 inmates and two staff member have died from the virus.  Moreover, the BOP has completed 82,068 COVID-19 tests.  *See* https://www.bop.gov/coronavirus/ (last accessed Dec. 4, 2020).  *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to Fort Dix FCI, where the defendant is a prisoner, as of December 5, 2020, the BOP reported that 103 inmates and 33 staff have tested positive for COVID-19 and 266 inmates and 6 staff have recovered at the facility. And, the facility has completed 1,343 tests.  There have been no reported deaths.  *See* https://www.bop.gov/coronavirus/ (last accessed Dec. 5, 2020).

## IV.    Discussion

Defendant urges the Court to release him because of his susceptibility to the COVID-19 virus.  *Id.*  He argues that his race and his medical condition of "ankylosing spondylitis B27" render him particularly vulnerable to COVID-19.[5]  Moreover, defendant claims he has increased susceptibility because of an "immune-suppressed system." ECF 88 at 19. According to plaintiff, his medical condition causes pain, affects his eyesight, and impairs his mobility. *Id.* at 16. Further, he claims that, if left untreated, "it can lead to blindness, respiratory diseases, and even death." *Id.* However, the defendant did not submit any medical records with his filing.

Defendant also asserts that he is housed at the minimum-security satellite camp at Ft. Dix with 140 other individuals; there are no partitions between bunk beds; and social distancing is "impossible." *Id.* at 6. Defendant contends that, in general, even without his underlying condition, COVID-19 "presents significant, life altering and potentially life-ending effects." *Id.* And, he maintains that COVID-19 is "much more deadly in the Bureau of Prisons." *Id.* at 18.

---

[5] No reference to this condition was mentioned in the PSR. *See* ECF 44.

The government opposes defendant's Motion at each step of the analysis. The government contends that the defendant's "claimed condition (ankylosing spondylitis B27)" does not qualify as an extraordinary and compelling reason for release. ECF 85 at 8-14.  Moreover, the government notes that Irby does not allege that he has any other conditions that would warrant relief.  *Id.*  And, in any event, the government maintains that Irby remains a danger to the community and the § 3553(a) factors militate against reducing his sentence. *Id.* at 14-18.

I agree with the government that Irby has not presented a medical condition identified by the CDC that places him at risk for severe illness from the virus. Although Irby avers that he has "ankylosing spondylitis B27," he has not provided the Court with any medical records or other evidence to establish that this condition renders him at heightened risk of severe illness due to COVID-19.  And, "ankylosing spondylitis B27" does not appear on the CDC's list of conditions that puts an individual at a greater risk of severe illness. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY; *see also United States v. Farmer*, CR 18-0808 RB, 2020 WL 5548838, at *2 (D. N.M. Sept. 16, 2020) (finding defendant with ankylosing spondylitis is not at higher risk of severe illness and is not eligible for compassionate release).

Notably, fear of contracting the coronavirus while incarcerated is not a sufficient reason for granting compassionate release. As Judge Chasanow aptly said: "While all share the concern of the public health challenges caused by COVID-19, and appreciate the heightened anxiety experienced by those incarcerated in correctional facilities, the generalized and unspecific reasons…do not satisfy the standard for compassionate release." *United States v. Harris*, DKC-08-00319, 2020 WL 2512420, at *1 (D. Md. May 15, 2020). "Simply put, the coronavirus is 'not tantamount to a "get out of jail free" card.'" *United States v. Williams*, PWG-13-544, 2020 WL

1434130, at *3 (D. Md. March 24, 2020) (citation omitted); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . .").

Because Irby has failed to provide an extraordinary and compelling reason for compassionate release, I need not address the relevant § 3553(a) sentencing factors. In my view, a reduction of Irby's sentence to time-served would be inconsistent with those factors.

Irby has only served about 50% of his sentence.  And, that sentence was below the Guidelines range. In addition, as the government notes, Irby's criminal history includes three previous drug convictions. ECF 44, ¶¶ 26, 27, 31.  Yet, these numerous convictions did not deter defendant from commission of this offense. Accordingly, release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.

Finally, to the extent the defendant's Motion seeks conversion of his sentence of imprisonment to a sentence of home detention, such a request must be submitted to the BOP.

Section 3642(c) of Title 18 of the United States Code is the only statute that authorizes the transfer of an inmate from prison to home confinement.  That section specifically provides that "[t]he authority under this subsection may be used to place a prisoner in home confinement for the shorter of ten percent of the term of imprisonment of that prisoner or six months."  18 U.S.C. § 3642.  Although § 12003(b)(2) of the CARES Act states that, during the COVID-19 emergency, "the director of the Bureau [of Prisons] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement," pursuant to § 3624(c)92) that authority is given to the Bureau of Prisons and not to the courts.  *See United States v. Johnson*, Crim. No. JKB-14-0356, 2020 WL 1929459, at *2 (Apr. 21, 2020); *United States v. Gray*, 2020

WL 1943476, at *3 (E.DN.C. Apr. 22, 2020) (finding "defendant must seek home confinement through the BOP's administrative system"); *United States v. Baker*, 2020 WL 2430945, at *1 (W.D.N.C. May 12, 2020) (stating that authority to grant such relief rests solely with the Director of the Bureau of Prisons).

### V.      Conclusion

For the reasons set forth above, I shall deny the Motion (ECF 81), *without prejudice*.

An Order follows.


Date:   December 8, 2020                                  _____/S/_____

                                                         Ellen L. Hollander
                                                         United States District Judge

17